# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2677 | **DATE** | August 16, 2001 |
| **CASE TITLE** | *Helen Kies vs. City of Aurora, et al.* | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ■ Pretrial conference set for September 11, 2001 at 10:00 a.m.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The court (1) grants in part and denies in part Kies's motion *in limine* [36-1]; (2) grants defendants' motions *in limine* [37-1, 38-1, 39-1, 40-1]; (3) grants Smith's motion for summary judgment with regard to Kies's § 1983 malicious prosecution claim, but denies it with regard to Kies's Illinois malicious prosecution and First Amendment claims [27-1]; and (4) grants the City's motion for summary judgment with regard to Kies's § 1983 excessive force, § 1983 malicious prosecution, and First Amendment claims, but denies it with regard to Kies's Illinois malicious prosecution claim [27-1]. Parties with authority to settle are ordered to appear in chambers for a pretrial conference on September 11, 2001.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 17 2001 | **50** |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| CW | courtroom deputy's initials | ED-7 FILED FOR DOCKETING 01 AUG 16 PM 5: 41 | date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| HELEN KIES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 00 C 2677 |
| | ) | |
| CITY OF AURORA and AURORA | ) | Judge James H. Alesia |
| POLICE OFFICER DERRICK | ) | |
| SMITH | ) | |
| | ) | |
| Defendants. | ) | |

**DOCKETED**

AUG 1 7 2001

## MEMORANDUM OPINION AND ORDER

Currently before the court are: (1) plaintiff's motion *in limine*, (2) defendants' motions *in limine*, (3) defendant Officer Smith's motion for partial summary judgment, and (4) defendant City of Aurora's motion for summary judgment. For the reasons set forth below, the court (1) grants in part and denies in part plaintiff's motion *in limine*, (2) grants defendants' motions *in limine*, (3) grants in part and denies in part Officer Smith's motion for partial summary judgment, and (4) grants in part and denies in part City of Aurora's motion for summary judgment.

## I. BACKGROUND[1]

Defendant Officer Derrick Smith ("Smith") is a police officer with the Aurora Police Department. At the time of the alleged incident, he was also a school resource officer at Waldo

---

[1]Unless otherwise indicated, the following facts – taken from the parties' Local Rule 56.1 statements – are undisputed.

50

Middle School ("Waldo"). Plaintiff Helen Kies ("Kies") has filed a complaint against Smith and the City of Aurora ("the City") alleging, *inter alia*, use of excessive force, malicious prosecution, and First Amendment violations. Her complaint is based upon an incident at Waldo on May 29, 1998, and upon a subsequent criminal charge Smith filed against Kies.

In order to understand this court's opinion, one must be aware of a number of facts. For the sake of clarity, a recitation of these facts is in two parts. Part A discusses the facts surrounding the May 29, 1998 incident at Waldo. Part B discusses the facts relating to Kies's excessive force complaint against Smith and his subsequent criminal obstruction charge against Kies.

A.    **Incident at Waldo Middle School**

On May 29, 1998, Kies drove to Waldo to pick up her daughter, Jessica Englund, and her daughter's two friends. As she was waiting in her vehicle about twenty to thirty feet from the school's entrance, Kies saw two boys, Salvador Delgado ("Delgado") and Giovanni Perez ("Perez"), begin fighting near the school. Smith, a City of Aurora police officer and school resource officer at Waldo, was present as the fight began.

To break up the fight, Smith grabbed Delgado while a counselor, Omar Magana ("Magana"), grabbed Perez. At Smith's direction, Magana released Perez, but Delgado escaped from Smith's grasp, and the boys starting fighting again. Smith grabbed Perez and turned him around. At this point, Kies got out of her vehicle and remained standing about twenty to thirty feet away. There were about twenty to twenty-five students present.

Kies then saw Smith hit Perez in the lower jaw with his forearm. Perez fell to the ground, landed on his hands, and started to crawl away. Before he could crawl away, however, Smith

2

grabbed Perez's shoulder, flipped him over on his back, jumped on him, and put his knee on Perez's chest to hold him down. Smith then struck Perez three to four times in the face with a closed fist. Perez briefly lost consciousness and lay on the ground without moving. The parties dispute the conduct of the student onlookers while Smith and Perez were on the ground. According to defendants, the students were becoming uncontrollable and chanting for Perez. According to Kies, the congregated children appeared frightened, but they were not loud or noisy.

About this time, Kies began to run from her vehicle toward Smith and Perez. She saw Smith pull up Perez by the back of his clothing and shake him. When she reached Smith and Perez, she heard Smith tell Perez to "shake it off" and that he was okay, but she did not hear Perez say anything. Kies asked Smith why he hit Perez. The parties dispute the volume of Kies's voice at this point – according to defendants, Kies used "a voice that was louder than a conversational voice," but according to Kies, she did not raise her voice. Smith told Kies it was none of her "damn business." Kies asked him again what he thought he was doing, and Smith told Kies it was a police matter and she should go home.

Smith then began walking along the sidewalk with Perez toward an entrance of the school about a block away. Because Perez could not walk on his own, Smith was dragging him. Again, the parties dispute the conduct of the student onlookers as Smith was taking Perez away. According to defendants, some of the students were pushing and shoving each other, but Kies denies this. Kies noticed a lump swelling on the side of Perez's cheek, and she continued to walk alongside Perez, who was next to Smith. She asked Smith if she could see if Perez was okay, but Smith ignored her. The three continued walking on or near the sidewalk toward the

school entrance. Perez stumbled, and Kies again asked Smith if she could see Perez and said that she would go home once she knew he was okay. At this point, Perez's eyes rolled back into his head, and Smith again told Kies it was none of her business and to go home.

Kies asked Smith one more time again why he had hit Perez. She also told Smith her name three or four times, and explained that she was Jessica Englund's mother, not Perez's mother. Kies was near tears or crying at this point. On at least two more occasions Smith told her to go home. Still, Kies continued to walk alongside Perez and ask Smith if she could see if Perez was okay. Smith did not answer. Finally, just as the three were nearing the school entrance, Kies leaned over to Perez and asked him if he was okay. When Perez did not answer, Kies told him to have his mother call her and she would tell her what happened. In response, Smith slapped Kies in the face. Kies told Smith not to touch her again, she began crying, and she walked back to her vehicle. There were at least ten people observing at this time. Smith then continued into the school with Perez, where Perez spoke with school officials. Defendants admit that Kies never blocked Smith's path or prevented him from arresting Perez, and that Kies never threatened Smith or made any threatening gestures. Throughout the entire incident, Kies walked on or near the sidewalk next to Perez, who was next to Smith, and the three continued walking toward the school entrance. That same day, Smith pressed criminal charges against Perez and Delgado, but after speaking with the students, he dismissed the charges and released them to their parents.

**B.**    **Excessive force complaint and subsequent obstruction charge**

Also that same day, Kies went to the Aurora police station and filed an excessive force complaint against Smith. Meanwhile, Smith filed a written police report regarding the incident.

4

About a week later, on June 4, 1998, Sergeant Leden ("Leden"), the investigator assigned to Kies's excessive force complaint, interviewed Kies regarding Smith's conduct. On June 19, 1998, about three weeks after the incident, Leden sent Smith a letter indicating that Kies had filed an excessive force complaint against him and that the department was conducting an investigation. On July 10, 1998, about six weeks after the incident, Leden interviewed Smith as part of the department's investigation. During the interview, Smith asked Leden whether he could still file a criminal obstruction charge against Kies.

On July 10, 1998, immediately following the interview and about six weeks after the incident at Waldo, Smith went to the State's Attorney's Office, completed a follow-up report and synopsis, and filed a criminal complaint against Kies, accusing her of obstructing a peace officer in connection with the May 29, 1998 incident. Obstructing a peace officer is a Class A misdemeanor carrying a penalty of up to 364 days in jail. Smith then asked a clerk how to issue a warrant for Kies's arrest.[2] Subsequently, Kies received a telephone call advising her that an arrest warrant had been issued, so she reported to the police station where she was fingerprinted and released.

After Leden completed his investigation of Kies's complaint, he wrote a report and gave the report and file to Commander Michael Nila ("Nila") for review. After additional investigation, Nila decided Smith had not violated the general order on use of force, but he had violated the department's general orders by filing charges against a citizen in retaliation for the

---

[2]Defendants admit that Robin Belleau, a Kane County assistant state's attorney involved in the case, believes that, in misdemeanor cases, the State's Attorney's Office is more likely to use notices to appear rather than arrest warrants.

citizen's filing a complaint against the officer. Chief Langston sent Smith a reprimand on November 4, 1998.

On July 13, 1999, Kies's criminal trial was held, and the judge entered a directed verdict in favor of Kies. During Kies's criminal prosecution, the State's Attorney's Office was aware that Kies had filed an excessive force complaint against Smith with the police department, that Smith filed the criminal charge against Kies after she filed her excessive force complaint, and that Kies and Leden both believed Smith filed the criminal charge in retaliation for Kies's complaint against him.

After prevailing at her criminal trial, Kies filed this seven-count complaint, alleging: (1) use of excessive force as prohibited under 42 U.S.C. § 1983 ("§ 1983"); (2) state law malicious prosecution; (3) § 1983 malicious prosecution; (4) § 1983 First Amendment violation; (5) § 1983 unconstitutional cover-up; (6) state law respondeat superior; and (7) state law indemnification. On June 5, 2001, the court granted defendants' motion to dismiss Kies's § 1983 unconstitutional cover-up claim and to dismiss defendants Nila and Brown from the amended complaint in its entirety. *See Kies v. City of Aurora*, 149 F. Supp. 2d 421 (N.D. Ill. 2001).

Currently before the court are (1) Kies's motion *in limine*; (2) defendants' motions *in limine*;(3) Smith's motion for partial summary judgment on Kies's malicious prosecution and First Amendment claims;[3] and (4) the City's motion for summary judgment.

---

[3]Smith also argues that he is entitled to summary judgment on Kies's § 1983 cover-up claim. However, because this claim was dismissed on June 5, 2001, the court need not address this argument. *See Kies v. City of Aurora*, 149 F. Supp. 2d 421 (N.D. Ill. 2001) (dismissing cover-up claim).

## II. DISCUSSION

As a threshold issue, the court will dispose of the parties' motions *in limine* to establish what evidence is admissible and, therefore, properly before the court in support of the summary judgment motions. Kies has brought a motion *in limine* consisting of four numbered paragraphs. Defendants Smith and the City (collectively "defendants") have brought four motions *in limine*. The court will address each party's motions *in limine* in turn.

### A.    Kies's motion *in limine*

Kies's motion *in limine* seeks to exclude the following: (1) reference to gangs, (2) reference to prior criminal charges, (3) reference to mental health issues, and (4) argument that Kies uses prescription drugs. Defendants responded to each paragraph of Kies's motion.

#### 1.    Reference to gangs

In moving to bar reference to gangs, Kies argues that there is no evidence in the record that any witness present at Waldo was in a gang, and that such reference is unfairly and unnecessarily prejudicial. Defendants respond that, while they do not intend to argue that Kies or any witness was a gang member, they may elicit testimony regarding Smith's overall concern about gangs on the day of the incident and how this concern affected Smith's actions. Defendants argue that such testimony is relevant and material to the ultimate issue in this case, namely in determining whether Smith was reasonable or whether he used excessive force against Kies. The court agrees with Kies.

The Seventh Circuit has recognized that evidence of gang membership is likely to be damaging to a party in the eyes of the jury. *United States v. Butler*, 71 F.3d 243, 251 (7th Cir. 1995). Evidence of gang membership should be excluded under Federal Rule of Evidence 403

"if its probative value is substantially outweighed by the danger of unfair prejudice." *United States v. Rodriguez*, 925 F.2d 1049, 1053 (7th Cir. 1991). Here, the court finds that the danger of unfair prejudice outweighs the probative value of this evidence. Accordingly, the motion is granted as to paragraph one.

### 2.   Reference to prior criminal charges

In moving to bar references to prior criminal charges against any witness, Kies argues that no convictions of any witness were uncovered during discovery which qualify under Federal Rule of Evidence 609. Defendants do not object, so long as the parties are barred from making reference to criminal charges or arrests made against Smith in the late 1980s.

Federal Rules of Evidence 404(b), 608(b), and 609(b) establish how and when unrelated convictions may be used to attack a witness's credibility. *United States v. Badger*, 983 F.2d 1443, 1452 (7th Cir. 1993). Here, however, Kies's motion and defendants' response are too general for the court to determine whether any criminal charges or convictions of any witness or party should be admissible at trial. Therefore, the motion is denied as to paragraph two, and the court reserves ruling until trial to determine whether any criminal charges or convictions of any witness or party are admissible.

### 3.   Reference to mental health issues

In moving to bar any reference to mental health issues, Kies argues that the mental health history and medical records of Kies or any of her family members, including her son, John Kies, Jr., have no relevance to this trial. The court agrees that John Kies, Jr.'s medical history is irrelevant in this case, as he is not a plaintiff, and such evidence is excluded.

However, the motion is denied to the extent that the mental health history and medical records of plaintiff will be admissible if any witness testifies to the emotional damages plaintiff suffered as a result of defendants' conduct. Therefore, the motion is granted in part and denied in part as to paragraph three.

### 4. Kies's use of prescription drugs

Kies moves to bar any argument that her use of prescription drugs relating to anxiety and depression affected her perceptions. Defendants respond that they do not intend to admit evidence or argue that Kies's use of prescription drugs affected her perceptions. Therefore, this motion is granted as agreed as to paragraph four.

In sum, the court grants in part and denies in part Kies's motion *in limine*. The court grants Kies's motion as to the first and fourth paragraphs, denies her motion as to the second paragraph, and grants in part and denies in part her motion as to the third paragraph.

### B. Defendants' motions *in limine*

Defendants have brought four motions *in limine*. Defendants seek to exclude the following: (1) evidence of liability insurance or indemnification, (2) evidence of accusations of misconduct against all police officers, (3) evidence of Leden's conversation with Kane County Assistant State's Attorney Robin Belleau, and (4) lay opinion evidence on whether Smith had probable cause to arrest Kies. Kies has not responded to any of defendants' motions *in limine*. Thus, the court treats these four unopposed motions *in limine* as agreed and grants defendants' motions *in limine*.[4]

---

[4]However, with regard to defendants' first motion *in limine*, defendants may not offer evidence, testimony or argument about Smith's financial circumstances or inability to pay a judgment against him. *See Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998) (limiting
(continued...)

9

## C.   Summary judgment standard

Having decided the evidentiary issues raised in the parties' motions *in limine*, the court

now proceeds to the summary judgment motions. Summary judgment is appropriate only where

"pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Funeral Fin. Sys.

v. United States*, 234 F.3d 1015, 1017 (7th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S.

317, 322-23 (1986)).  A genuine issue of material fact exists when, viewing the record and

drawing all reasonable inferences in a light most favorable to the non-moving party, a reasonable

jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

248 (1986); *Smith v. Severn,* 129 F.3d 419, 425 (7th Cir. 1997).

The moving party bears the burden of showing that no genuine issue of material fact

exists. *Celotex,* 477 U.S. at 322; *Anderson,* 477 U.S. at 256.  Once the moving party makes a

prima facie showing that it is entitled to judgment as a matter of law, the non-moving party may

---

[4](...continued)
such evidence). If defendants do offer evidence or argument that Smith is unable to personally
satisfy a judgment against him, Kies will be allowed to introduce rebuttal evidence of liability
insurance. *See id.* at 380.

Also, with regard to defendants' third motion *in limine*, the court notes that in their 56.1
statements, both parties agree that, in reviewing the investigation of Kies's excessive force
complaint, Nila concluded that Smith had violated the department's general orders by filing
charges against a citizen in retaliation for the citizen filing a complaint against the officer, and
that Langston sent Smith a reprimand to this effect on November 4, 1998. Further, it is an
undisputed fact that, during Kies's criminal prosecution, the State's Attorney's Office was aware
that Kies and Leden both believed Smith filed the obstruction charge in retaliation for Kies's
excessive force complaint against Smith. Therefore, the court reserves ruling until trial to
determine whether nonhearsay evidence or testimony – other than the Belleau e-mail regarding
the underlying conversation with Leden – support these undisputed facts and are admissible at
trial.

not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing that a genuine issue for trial exists. *Celotex*, 477 U.S. at 324; *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989).

**D.  Smith's motion for partial summary judgment**

Smith argues that he is entitled to summary judgment on Kies's (1) § 1983 malicious prosecution claim, (2) Illinois malicious prosecution claim, and (3) § 1983 First Amendment claim. The court will address each claim in turn.

**1.  Section 1983 malicious prosecution claim**

Smith argues he is entitled to summary judgment on Kies's § 1983 malicious prosecution claim because Kies did not suffer a deprivation of liberty of constitutional magnitude. Kies responds that (1) her § 1983 malicious prosecution claim is based on a substantive due process violation and (2) the financial and emotional consequences of her arrest and prosecution constitute a deprivation of her liberty interest.

First, the Supreme Court has held – and the Seventh Circuit has recognized – that an action for malicious prosecution cannot be based on substantive due process. *See Cervantes v. Jones*, 188 F.3d 805, 808 n.2 (7th Cir. 1999) (citing *Albright v. Oliver*, 510 U.S. 266, 275 (1994)). Rather, a criminal defendant may bring a § 1983 claim for malicious prosecution for a violation of her Fourth Amendment rights when she is prosecuted without reasonable grounds and unlawfully incarcerated before trial. *Abrams v. Walker*, No. 00 C 5768, 2000 WL 1808527, *2 (N.D. Ill. 2000) (*citing Cervantes*, 188 F.3d at 808). The only constitutional amendment implicated by a malicious prosecution claim is the Fourth Amendment; a malicious prosecution claim does not fall under the due process clause directly. *Newsome v. McCabe*, No. 00-2326, ---

11

F.3d ----, 2001 WL 771023, at *3 (7th Cir. July 11, 2001). *See also Washington v. Summerville*,

127 F.3d 552, 558 (7th Cir. 1997); *Spiegel v. Rabinovitz*, 121 F.3d 251, 256-57 (7th Cir. 1997).

Therefore, Kies's first argument fails.

Second, no issue of material fact exists with respect to whether or not Kies suffered a

deprivation of liberty. Kies voluntarily appeared at the police station after receiving notice that

there was a warrant for her arrest. When she arrived at the station, she was detained briefly for

fingerprints and released. She was never incarcerated. As discussed below, these facts are

insufficient to prove that Kies suffered a deprivation of liberty.

A liberty deprivation sufficient to support a malicious prosecution claim must rise to a

"constitutional magnitude." *Spiegel*, 121 F.3d at 256. An arrest and incarceration until an

accused can post bail does not constitute a sufficient constitutional deprivation of liberty to meet

the deprivation of liberty element of a malicious prosecution claim. *Sneed v. Rybicki*, 146 F.3d

478, 481 (7th Cir. 1998). Rather, a plaintiff who alleges only that he was arrested and detained

without probable cause has only pleaded false arrest. *Id.* (stating that a plaintiff must allege all

the elements of malicious prosecution and cannot merely re-label a time-barred false arrest

claim). *See also Speigel*, 121 F.3d at 256 (holding that – when plaintiff was arrested, charged

with battery, and incarcerated for an hour, and as a result was evicted from his apartment and

experienced adversely affected employment status and lost income – although plaintiff's

circumstances were "unfortunate, ... none of them [were] deprivations of property of a

constitutional magnitude."); *Washington*, 127 F.3d at 559 (holding that plaintiff had simply

refashioned his wrongful arrest and excessive force claims into a malicious prosecution claim);

*Mizwicki v. City of Naperville*, 96 C 5508, 1999 WL 413501, at *11 (N.D. Ill. June 2, 1999)

(granting summary judgment on § 1983 malicious prosecution claim because arrest and trial were insufficient to prove the individual suffered deprivation of liberty interest); *DuFour-Dowell v. Cogger*, 980 F. Supp. 955 (N.D. Ill.1987) (finding that plaintiff who was arrested, tried, and acquitted of a crime did not suffer a deprivation of liberty).[5]

Kies fails to cite any authority in support of her proposition that the financial and emotional consequences of her arrest and prosecution constitute a constitutional deprivation of liberty. In fact, the Seventh Circuit has rejected this argument. *See Spiegel*, 24 F.3d at 434 ("If liberty is not at stake, it is difficult to see how [malicious prosecution] could be thought to invade an interest protected by the due process clause ... merely by virtue of its effect on the reputation or, like any suit, the pocketbook of the defendant."). *See also Penn*, 2001 WL 322067, at *6 (holding that, to succeed on a malicious prosecution claim, a plaintiff must show that she suffered incarceration or some other palpable injury); *DuFour-Dowell,* 969 F. Supp. at 1115 n.12 (recognizing that the Seventh Circuit has made it clear that merely incurring defense costs is not a palpable injury cognizable for purposes of § 1983 malicious prosecution); *Zisis v. St. Joseph Township of Allen County*, 979 F. Supp. 806, 811-12 (N.D. Ind. 1997) (granting summary judgment against plaintiff on § 1983 malicious prosecution claim because plaintiff suffered only emotional damages and attorney's fees, and these damage did not constitute a deprivation of property of constitutional magnitude). Thus, Kies's second argument fails.

---

[5]Also, while Justice Ginsburg stated in a concurring opinion that a malicious prosecution claim could be found under the Fourth Amendment in that a defendant remains seized for trial so long as he is obligated to appear in court and answer the State's charges, *see Albright*, 510 U.S. at 279 (Ginsburg, J., concurring), the Seventh Circuit has rejected this concept of a "continuing seizure." *See, e.g., Washington*, 127 F.3d at 560; *Reed v. City of Chicago*, 77 F.3d 1049, 1052 n.3 (7th Cir. 1996); *Wilkins v. May*, 872 F.2d 190, 193 (7th Cir. 1989).

Kies also relies upon *Leslie v. Doyle*, 125 F.3d 1132 (7th Cir. 1997), in arguing that an action taken in retaliation for exercising a constitutional right (i.e., the right to free speech) is actionable as a § 1983 malicious prosecution claim. The court disagrees with Kies's reading of *Leslie*. In *Leslie*, the court was addressing a prisoner's Fourteenth Amendment due process claim, and it likened the prisoner's claim to a malicious prosecution claim. *Id.* at 1136. In dicta, the court simply recognized that some circuits hold malicious prosecution actionable if initiated in retaliation for the exercise of a constitutional right, but that the facts before the court did not suggest retaliation. *Id.* at 1137 n.2. As noted, the Seventh Circuit, in a long line of cases, has allowed a § 1983 malicious prosecution claim only where the defendant's conduct implicates the Fourth Amendment. *See Newsome*, --- F.3d ----, 2001 WL 771023, at *3; *Washington*, 127 F.3d at 558; *Spiegel*, 121 F.3d at 256-57. Here, under the law of this circuit, Smith's arrest of Kies does not implicate the Fourth Amendment; therefore, Kies's § 1983 malicious prosecution claim must fail. *See Hahn v. Vill. of Downers Grove*, No. 98 C 7281, 1999 WL 167036, at *6 (N.D. Ill. Mar. 19, 1999) (declining to follow the dicta in *Leslie*).

In sum, even taking into account that Kies went to trial on the obstruction charge, she has failed to show that she suffered a deprivation of liberty of constitutional magnitude, and her § 1983 malicious prosecution claim against Smith must fail. Thus, the court finds that Smith is entitled to judgment as a matter of law on this claim. Accordingly, the court grants Smith's motion for summary judgment on Kies § 1983 malicious prosecution claim.

## 2. Illinois malicious prosecution claim

Smith argues he is entitled to summary judgment on Kies's Illinois malicious prosecution claim because he had probable cause for arresting Kies. To establish malicious prosecution

14

under Illinois law, Kies must demonstrate: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages. *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 922 (7th Cir. 2001) (citing *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996)). All these elements are required; the absence of even one element will preclude recovery for malicious prosecution. *Id.*

Smith argues that he had probable cause for arresting Kies, and, therefore, Kies cannot establish the third element of a malicious prosecution claim under Illinois law, namely the absence of probable cause for her criminal proceeding. Smith also argues that, even if probable cause did not actually exist for Kies's arrest, qualified immunity shields him from liability if a reasonable officer would have believed that probable cause existed.

### a.     Probable cause and qualified immunity standards

The existence of probable cause is a complete defense to malicious prosecution under both Illinois and federal law. *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989); *Burghardt v. Remiyac*, 565 N.E.2d 1049, 1052 (Ill. App. Ct. 1991). The existence of probable cause is a mixed question of law and fact. *Ornelas v. United States*, 517 U.S. 690, 696 (1996); *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998). If facts sufficient to create probable cause are undisputed, probable cause is a question of law. *Potts v. City of Lafayette*, 121 F.3d 1106, 1112 (7th Cir. 1997); *People v. Cooke*, 701 N.E.2d 526, 529 (Ill. App. Ct. 1998). A dispute concerning some facts relevant to determining the existence of probable cause does not preclude a finding of probable cause, so long as the finding survives after adopting the plaintiff's version of disputed facts supported by the record. *Cervantes*, 188 F.3d at 811. *See Hunter v.*

*Bryant*, 502 U.S. 224, 228 (1991) (stating that the question of whether a reasonable officer could have believed that he had probable cause to arrest was a question for the court, not the trier of fact, on defendants' summary judgment motion on qualified immunity grounds).

Probable cause to arrest exists if, at the time of the arrest, the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a reasonable belief that the suspect had committed a crime. *Qian v. Kautz*, 168 F.3d 949, 953 (7th Cir. 1999); *Cervantes*, 188 F.3d at 811. Courts evaluate probable cause "not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person *in the position of the arresting officer* – seeing what he saw, hearing what he heard." *Mahoney v. Kesery*, 976 F.2d 1054, 1057 (7th Cir. 1992) (emphasis in original). Probable cause is, therefore, an objective test based upon "factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." *See Wollin v. Gondert*, 192 F.3d 616, 623 (7th Cir. 1999) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). Thus, as long as the officer's belief is reasonable, it need not be correct; reasonable mistakes will be excused. *Texas v. Brown*, 460 U.S. 730, 742 (1983); *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1246 (7th Cir. 1994).

Further, qualified immunity protects officials who reasonably but mistakenly conclude that probable cause to arrest exists. *Spiegel*, 196 F.3d at 723. Qualified immunity protects a law enforcement officer from claims based on an arrest without probable cause unless "it is obvious that no reasonably competent officer" would have believed that there was probable cause to arrest. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In other words, even if an officer arrests a plaintiff without probable cause, the officer is still immune if a reasonable officer, in light of the

16

information available to the officers at the time of plaintiff's arrest, could have believed that there was probable cause to arrest. *Juriss v. McGowan*, 957 F.2d 345, 351 (7th Cir. 1992). An officer's actions will be cloaked with qualified immunity even if the arrestee is later found innocent. *Jenkins v. Keating*, 147 F.3d 577, 585 (7th Cir. 1998).

Smith argues he is entitled to summary judgment on Kies's malicious prosecution claim because Smith had probable cause to arrest Kies for (a) the offense with which she was charged: obstructing or resisting a police officer, and (b) three closely-related charges: disorderly conduct, criminal trespass, and disobedience to a police officer. Smith argues that, even if he did not have probable cause to arrest Kies, he is entitled to qualified immunity for this arrest. Therefore, turning to the facts of this case, this court must determine whether, as a matter of law, it was objectively reasonable for Smith to believe he had probable cause to arrest or prosecute Kies for any of the proffered offenses, or at least that a reasonable officer, in light of the information of which Smith was aware at the time of Kies's arrest,[6] could have believed he had probable cause to arrest Kies.

**b.      Obstructing a peace officer**

Kies was arrested for violating 720 ILL. COMP. STAT. 5/31-1, "Resisting or Obstructing a Peace Officer or Correctional Institution Employee." The Illinois obstruction statute provides that, "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer or correctional institution employee of any authorized act within his official capacity commits a Class A misdemeanor." 720 ILL. COMP. STAT. 5/31-1. According to the

---

[6]As stated earlier, the time of Kies's arrest was about six weeks after the incident at Waldo.

Illinois Supreme Court, obstruction involves (i) a physical act of resistance which (ii) has the effect of impeding, hindering, or delaying the performance of an officer's duties. *Williams v. Jaglowski*, No. 97 C 8850, 1999 WL 965866, at *4 (N.D. Ill. Sept. 29, 1999) (citing *People v. Raby*, 240 N.E.2d 595 (Ill. 1968)).

### i. Physical act of resistance

Obstruction requires a *physical act* that impedes, hinders, interrupts, prevents, or delays the performance of an officer's duties. *Abrams v. Walker*, No. 00 C 5768, 2001 WL 363488, at *3 (citing *People v. Hilgenberg*, 585 N.E.2d 180 (Ill. App. Ct. 1991)). It is well settled under Illinois law that resistance must be physical – verbal resistance alone does not constitute resisting a police officer. *See Ryan v. County of DuPage*, 45 F.3d 1090, 1093 (7th Cir. 1995) (collecting cases). *See also Abrams*, 2001 WL 363488, at *3 (stating that argument alone does not by itself constitute resisting or obstructing). Here, it is undisputed that Kies never touched Smith or Perez throughout the incident. Therefore, there was no physical act of resistance.

Smith maintains that, in addition to arguing with and criticizing Smith, Kies committed the physical acts of standing face-to-face with him and running afoot with him, and that physical resistance in the form of refusing to obey an officer's order constitutes a physical act for the purposes of obstructing a police officer. The court disagrees with Smith and finds that this case involves mere verbal confrontation at most. Kies did not lead Perez away, *see People v. Gibbs*, 53 N.E.2d 117 (Ill. App. Ct. 1969), or stand in Smith's way, *see People v. Finley*, 363 N.E.2d 871, 873 (Ill. App. Ct. 1977). Rather, Kies merely walked alongside Perez and asked Smith questions while he continued escorting Perez into the school. *See Collier v. Baker*, No. 96 C 0023, 1999 WL 543206, at *6 (N.D. Ill. July 23, 1999) (finding that no reasonable officer could

have found probable cause to arrest for obstructing a peace officer when arrestee simply "peppered the officers with questions and statements that they could not do what they were attempting to do."). Even if Kies walked alongside Perez who was next to Smith, and even if she faced Smith when asking him why he hit Perez, the court finds that these actions do not satisfy the obstruction statute's physical-act requirement. Further, Kies's actions that Smith characterizes as refusing to obey a police officer do not rise to the level of a physical act under the statute. *See Ryan*, 45 F.3d at 1093 (finding that "physical resistance took the form of [plaintiff]'s refusing to take off the mask, which left the police with a choice between arresting him and removing the mask forcibly"). Therefore, the first prong of the obstruction statute – the physical-act requirement – is not met here.

### ii.     Impeding officer's duties

The physical-act requirement is only one prong of an obstruction inquiry. *Williams*, 1999 WL 965866, at *7. To constitute obstruction, an action must satisfy the physical-act requirement *and* have the effect of imposing an obstacle which impedes, hinders, interrupts, prevents or delays the performance of the officer's duties. *Id.* (citing *People v. Raby*, 240 N.E.2d 595, 599 (Ill. 1968)). In other words, the obstruction statute proscribes only those physical actions which have the effect of interfering with the officer's lawful duty. *Id.* Even if this court were to conclude that Kies's actions satisfied the statute's physical-act requirement, Smith has not shown that Kies in any way interfered with the performance of Smith's lawful duties. In fact, the defendants admit that Kies did not block Smith's path or in any way prevent him from arresting Perez. Further, the defendants admit Kies stayed at Perez's side, except when she leaned over to speak to Perez, at which point Kies admits she was closer to Smith. Defendants also admit

that Kies never threatened Smith or made any threatening gestures, and that if she would have, Smith would have arrested her. Kies never stepped in between Smith and Perez, and she did not delay the performance of Smith's duties. In fact, the undisputed facts do not reveal that Smith ever stopped his course of walking Perez into the school – except, perhaps, if he needed to stop walking to slap Kies in the face. Therefore, the second prong of the statute is not met here.

In sum, because neither prong of the obstruction statute was met, the court concludes that Smith did not have probable cause to arrest Kies for obstruction in violation of 720 ILL. COMP. STAT. 5/31-1, and further, that no reasonably competent officer would conclude that there was probable cause to arrest Kies for obstruction. Therefore, Smith did not have probable cause to arrest Kies for obstruction, and he is not entitled to qualified immunity for this charge. Accordingly, the court denies Smith's motion for summary judgment on Kies's Illinois malicious prosecution claim on this basis.

### c.   Closely-related charges

Smith correctly observes that it is not necessary that probable cause existed for the exact charge for which Kies was arrested. An arrest without probable cause does not violate the arrestee's rights so long as probable cause existed on a closely-related charge. *Biddle,* 992 F.2d at 676; *Sparing v. Vill. of Olympia Fields,* 77 F. Supp. 2d 891, 898 (N.D. Ill. 1999). Nevertheless, the Seventh Circuit has emphasized that,

> while an objective standard is to be employed in assessing the legal basis for an arrest, we will not indulge in *ex post facto* extrapolations of all crimes that might have been charged on a given set of facts at the moment of the arrest .... Such an exercise might permit an arrest that was a sham or fraud at the outset, really unrelated to the crime for which probable cause to arrest was actually present, to be retroactively validated. Essentially we have in mind a rationale that would recommend itself to a reasonable police officer acting in good faith. A rationale which is extravagant or novel, or which is based on [stale] facts that could have formed the basis for an earlier arrest, may be rejected as unreasonable.

*Richardson v. Bonds*, 860 F.2d 1427, 1431 (7th Cir. 1988) (internal citations omitted). The court is to "strike a balance which allows the arresting officer to choose which crime she will charge without having to charge every single offense sustainable on the facts, and yet does not open the door to the extrapolation of offenses in an effort to justify a sham arrest." *Biddle*, 992 F.2d at 676 (internal quotation omitted). In light of the facts of this case – including the fact that Smith did not issue a warrant for Kies's arrest until six weeks after the incident, but issued that warrant on the same day he was first interviewed regarding her excessive force complaint against him – this court is inclined to reject Smith's rationale regarding closely-related charges as an "*ex post facto* extrapolation[ ] of all crimes that might have been charged ... at the moment of arrest." *Richardson*, 860 F.2d at 1431. Nevertheless, the court will address the merits of Smith's argument.

Smith argues he is entitled to summary judgment on Kies's malicious prosecution claim because, even if probable cause was lacking with respect to obstructing a peace officer, he nevertheless had probable cause to arrest Kies for three closely-related offenses for which she was not charged: (i) disorderly conduct, (ii) criminal trespass, and (iii) disobeying a police officer. He also argues that he is entitled to qualified immunity based on these offenses. The court will address each offense in turn.

### i.    Disorderly conduct

First, Smith argues he had probable cause to arrest Kies for the closely-related charge of disorderly conduct. Illinois law provides that a person commits disorderly conduct when she "[d]oes any act in such unreasonable manner as to alarm another and to provoke a breach of the peace ...." 720 ILL. COMP. STAT. 5/26-1(a)(1), *amended by* 2001 Ill. Legis. Serv. P.A. 92-16.

"Disorderly conduct has never had a precise definition; the types of conduct that may be disorderly conduct 'almost defy definition.'" *Penn*, 2001 WL 322067, at *4 (quoting *Biddle*, 992 F.2d at 677 (citations omitted)). Whether particular conduct is disorderly, therefore, depends not only on the conduct itself, but also on the conduct's unreasonableness in relation to the surrounding circumstances. *Id.* Three elements are required for disorderly conduct: the individual's conduct must (a) be unreasonable, (b) disturb or alarm another, and (c) threaten to provoke or provoke a breach of the peace. *Id.*

Arguing with a police officer, even loudly, does not by itself constitute disorderly conduct. *See Humphrey*, 148 F.3d at 727. Although arguing with a police officer may not by itself be a violation, other circumstances may lead to the conclusion that an individual's behavior does constitute disorderly conduct. *See Penn*, 2001 WL 322067, at *4 (finding that because the "officers faced a crowd of 300, growing angrier by the minute, and confronted individuals yelling and pounding on the windows..., these officers could reasonably believe that [plaintiff's] behavior constituted probable cause to arrest him for disorderly conduct ...."). Therefore, in this case, probable cause to arrest for disorderly conduct exists if Smith could reasonably believe that Kies's conduct was unreasonable, disturbed or alarmed others, and threatened a breach of the peace in light of surrounding circumstances. *See Biddle*, 992 F.2d at 677.

In this case, there is a dispute of material fact over the status of the onlookers at the time of the incident. It remains in dispute whether there was a hostile crowd ready to fight or only a few disinterested or frightened students present. This issue of material fact prevents the court from determining whether Kies's actions threatened a breach of the peace in the surrounding circumstances. If, as Kies alleges, the congregated children were not loud or noisy, or pushing

and shoving each other, then there was little basis for Smith to believe that a breach of the peace was threatened. Thus, this issue of material fact precludes a finding that Smith had probable cause to arrest Kies for disorderly conduct. The dispute over the status of the crowd also prevents a finding that Smith is entitled to qualified immunity – without a determination of whether there was a volatile crowd gathered at the time of the incident, the court cannot determine whether a reasonably competent officer would conclude that Kies threatened a breach of the peace and that there was probable cause to arrest her for disorderly conduct. This issue of material fact prevents the granting of summary judgment. Accordingly, the court denies Smith's motion for summary judgment on Kies's Illinois malicious prosecution claim on this basis.

### ii.    Criminal trespass

Second, Smith argues that he had probable cause to arrest Kies for the closely-related charge of criminal trespass. Under Illinois law, a person commits criminal trespass to real property when she "remains upon the land of another, after receiving notice from the owner or occupant to depart ...." 720 ILL. COMP. STAT. 5/21-3(a)(3). Smith claims he had probable cause to arrest Kies for criminal trespass because, as Kies walked on or near the sidewalk alongside Perez, Smith, acting as an employee and agent of the school, told Kies on at least three occasions to go home and that the incident was none of her business.

Assuming *arguendo* that Kies remained upon the school's property after receiving sufficient notice to depart, section (f) of the criminal trespass statute decriminalizes an otherwise illegal entry onto property when a person enters "for emergency purposes." 720 ILL. COMP. STAT. 5/21-3(f). The statute defines an "emergency" as "a condition or circumstance in which

an individual is or is reasonably believed by the person to be in imminent danger of serious bodily harm or in which property is in imminent danger of damage or destruction." *Id.*

In this case, it is undisputed that Perez was briefly unconscious, his eyes were rolling back into his head, he was nonresponsive to questions, and he was unable to walk on his own. In light of these undisputed facts, Kies reasonably believed Perez to be in imminent danger of serious bodily harm. This is further evidenced by the fact that Kies clearly was disturbed and near tears or crying for much of the incident.

In light of these circumstances, the court finds that Smith could not have reasonably believed that Kies was committing a crime of criminal trespass by walking on the sidewalk alongside Perez and wanting to check on Perez throughout this apparent emergency. Further, a reasonably competent officer would have considered the situation an emergency and would not have believed he had probable cause to arrest Kies for criminal trespass. Therefore, the court finds Smith did not have probable cause to arrest Kies for criminal trespass, and he is not entitled to qualified immunity for this charge. Accordingly, the court denies Smith's motion for summary judgment on Kies's Illinois malicious prosecution claim on this basis.

### iii. Disobeying a police officer

Third, Smith argues he had probable cause to arrest Kies for the closely-related charge of disobeying a police officer. Under the Illinois Vehicle Code Rules of the Road, "No person shall wilfully fail or refuse to comply with any lawful order or direction of any police officer, fireman, or school crossing guard invested by law with authority *to direct, control, or regulate traffic.*" 625 ILL. COMP. STAT. 5/11-203 (emphasis added).

24

The court finds that Smith did not have probable cause to arrest Kies for disobeying a police officer and that he is not protected by qualified immunity because no reasonably competent officer would have believed probable cause existed to arrest Kies for this charge. No reasonably competent officer would believe that a school security officer walking a student into the school was "direct[ing], control[ling], or regulat[ing] traffic" in accordance with 625 ILL. COMP. STAT. 5/11-203 or that, by walking alongside Perez on the sidewalk, Kies was wilfully and unnecessarily attempting to obstruct any person traveling on the sidewalk. Accordingly, the court denies Smith's motion for summary judgment on Kies's Illinois malicious prosecution claim on this basis.

In sum, the court concludes that Smith did not have probable cause to arrest Kies for obstructing a police officer, or for the closely-related offenses of criminal trespass or disobeying a police officer, and he is not entitled to qualified immunity for these charges. Further, the court concludes that an issue of material fact precludes a finding that Smith had probable cause to arrest Kies for disorderly conduct, or that he is entitled to qualified immunity for this charge. Therefore, the court denies Smith's motion for summary judgment on Kies's Illinois malicious prosecution claim on this basis.

### 3.  First Amendment claim

Smith argues he is entitled to summary judgment on Kies's § 1983 First Amendment claim because (a) Smith had probable cause to arrest Kies or (b) Smith was entitled to qualified immunity for making the arrest. As discussed *supra* Sect. II.D.2.b-c, the court has not concluded that (a) Kies's arrest was supported by probable cause or (b) Smith was entitled to qualified immunity for making the arrest. Therefore, Smith's arguments fail, and Kies First Amendment

25

claim survives summary judgment. Accordingly, the court denies Smith's motion for summary judgment on Kies's First Amendment claim.

## E.     The City's Motion for Summary Judgment

The City argues that it is entitled to summary judgment on Kies's (1) § 1983 excessive force, malicious prosecution, and First Amendment claims, and (2) Illinois malicious prosecution claim. The court will address each claim in turn.

### 1.     Section 1983 claims

The City argues that it is entitled to summary judgment on Kies's § 1983 excessive force, malicious prosecution, and First Amendment claims because Kies has failed to provide evidence that Smith acted pursuant to a city custom, practice, or policy.[7] The court agrees with the City.

Municipal liability under § 1983 does not automatically spring from the acts of municipal employees. *Luck*, 168 F.3d at 325 (citing *Pembaur*, 475 U.S. at 478). Instead, municipalities are liable only for wrongs that they themselves cause. *Id.* (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 818 (1985)). Under § 1983, a municipality is answerable only for the

---

[7]In response to the City's motion for summary judgment, Kies's sole argument is that the City is liable under § 1983 for an unconstitutional cover-up because the evidence establishes that policymakers with policymaking authority conspired to perpetuate a wrongful prosecution. On June 5, 2001, the court dismissed Kies's § 1983 unconstitutional cover-up claim. Therefore, the court need not address this argument. In the event Kies is attempting to argue that the City is liable on a "final policymaker" theory for her other three § 1983 claims, such an argument would fail. While Kies is correct that municipal liability may arise from "acts which the municipality has officially sanctioned or ordered," such official sanctioning requires action by an ultimate municipal decision-maker who has "final policymaking authority." *Luck v. Rovenstine*, 168 F.3d 323, 325 (7th Cir. 1999) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986)). Kies has provided no evidence that any "ultimate municipal decision-maker" with "final policymaking authority" for the City sanctioned Smith's conduct. Thus, the City would not be liable on this basis.

consequences of its policies. *Dye v. Wargo*, 253 F.3d 296, 298 (7th Cir. 2001) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978)).

First, Kies concedes that there is no evidence that the City has a policy or practice of using excessive force. Thus, the court finds that the City is entitled to judgment as a matter of law on this claim. Accordingly, the court grants the City's motion for summary judgment on Kies's § 1983 excessive force claim.

Second, Kies has presented no evidence that the City has a policy or practice of maliciously prosecuting citizens or violating their First Amendment rights. Kies has not offered any evidence that malicious prosecution or First Amendment violations by the City are common; indeed, Kies has produced no evidence of any other officer ever filing charges against a citizen in retaliation. Even if Smith filed charges against Kies in retaliation, this isolated incident does not establish a municipal policy of maliciously prosecuting citizens or violating their First Amendment rights. *See Williams v. Heavener*, 217 F.3d 529, 532 (7th Cir. 2000) ("one incident is not sufficient to establish a custom that can give rise to Monell liability."); *Tuttle,* 471 U.S. at 824 ("considerably more proof than [a] single incident will be necessary ... to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the unconstitutional deprivation."). Thus, the court finds that the City is entitled to judgment as a matter of law on these claims. Accordingly, the court grants the City's motion for summary judgment on Kies's § 1983 malicious prosecution and First Amendment claims. *See Dye*, 253 F.3d at 299 (affirming summary judgment on § 1983 claim when plaintiff offered no evidence of policy or practice).

In sum, the court grants the City's motion for summary judgment on Kies's § 1983 excessive force, malicious prosecution, and First Amendment claims.

## 2. **Illinois malicious prosecution claim**

The City argues that it is entitled to summary judgment on Kies's malicious prosecution because a municipality cannot be liable for malicious prosecution for the conduct of one of its officers if the officer is not liable.[8] It is true that, if Smith is not liable on the Illinois malicious prosecution claim, the City is also not liable. 745 ILL. COMP. STAT. 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."). *See Slaven v. City of Chicago*, No. 95 C 7310, 2001 WL 199822, at *4 (N.D. Ill. Feb. 28, 2001) (granting judgment as a matter of law to City after finding police officer defendants not liable on state malicious prosecution claim). Here, however, the court has not found that Smith is not liable on the Illinois malicious prosecution claim. *See* Sect. II.D.2. Therefore, the court denies the City's motion for summary judgment on Kies's Illinois malicious prosecution claim.

## III. CONCLUSION

For the foregoing reasons, the court (1) grants in part and denies in part plaintiff's motion *in limine*; (2) grants defendants' motions *in limine*; (3) grants Officer Smith's motion for partial summary judgment with regard to Kies's § 1983 malicious prosecution claim, but denies Smith's motion with regard to Kies's Illinois malicious prosecution and First Amendment claims; and

---

[8]Because the City does not specify whether this argument applies to Kies's § 1983 malicious prosecution claim or her Illinois malicious prosecution claim, the court has considered this argument for both claims. However, because the court granted the City's motion for summary judgment on Kies's § 1983 malicious prosecution claims on other grounds, *supra* Sect. II.E.1., it addresses this argument only as it applies to Kies's Illinois malicious prosecution claim.

(4) grants City of Aurora's motion for summary judgment with regard to Kies's § 1983 excessive

force, § 1983 malicious prosecution, and § 1983 First Amendment claims, but denies the City's

motion with regard to Kies's Illinois malicious prosecution claim.

_AUG 16 2001_
Date

James H. Alesia
United States District Judge